**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARIAH PITTS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case: 4:26-cv-01885** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ST. LUKE'S HOSPITAL,** | ) | |
| | ) | |
| **Defendant.** | ) | **Jury Trial Demanded** |
| | ) | |

# COMPLAINT

Plaintiff, Mariah Pitts ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against St. Luke's Hospital ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, as amended ("ADA") seeking redress for Defendant's discrimination on the basis of Plaintiff's disability, Defendant's failure to accommodate Plaintiff's disability, and Defendant's retaliation against Plaintiff for engaging in protected activity under the ADA.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331.

3. This action is authorized and instituted pursuant to 42 U.S.C. § 12101 *et seq*.

4. Venue of this action properly lies in the Eastern District of Missouri, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as Defendant operates and transacts business in this judicial district and the events giving rise to Plaintiff's claims occurred within this District.

## ADMINISTRATIVE PREREQUISITES

5. All conditions precedent to jurisdiction under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*, have occurred or been complied with.

6. A charge of employment discrimination on the basis of disability and retaliatory discharge was filed by Plaintiff with the Equal Employment Opportunity Commission ("EEOC") (Attached hereto as Exhibit "A").

7. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B"), and Plaintiff filed this lawsuit within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## PARTIES

8. At all times material to the allegations of this Complaint, Plaintiff, Mariah Pitts, resides in St. Clair County in the State of Illinois.

9. At all times material to the allegations in this Complaint, Defendant, St. Luke's Hospital, is a hospital doing business in and for St. Louis County, Missouri whose address is 232 S Woods Mill Rd, Chesterfield, MO 63017.

10. Plaintiff was employed by Defendant as an "employee" within the meaning of ADA, 42 U.S.C. § 12111(4).

11. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by ADA, and has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 12111(5)(A).

## BACKGROUND FACTS

12. Plaintiff was employed by the Defendant as a Patient Care Technician from on or about March 9, 2026, until she was terminated on or about June 3, 2026.

13. Plaintiff suffers from physical impairments, including chronic migraines and Polycystic Ovarian Syndrome ("PCOS").

14. Plaintiff's chronic migraines cause severe, debilitating headaches requiring medication and periodic inability to work or care for herself.

15. Plaintiff has a history of migraine diagnoses dating back to childhood which cause nausea, blurred vision, pain, and vomiting.

16. Plaintiff's PCOS causes significant abdominal pain and related medical complications.

17. Plaintiff's impairments substantially limit one or more of Plaintiff's major life activities including, but not limited to, driving, reading, daily activities, and sleeping.

18. Plaintiff is a "qualified individual" as defined under the ADA.

19. Plaintiff is "disabled" as defined under the ADA.

20. Plaintiff is a member of a protected class because of her disabilities.

21. Despite these disabilities, Plaintiff was qualified and able to perform the essential functions of her job, with or without reasonable accommodation.

22. Plaintiff was diagnosed by a physician with chronic migraines, approximately two months prior to her termination.

23. Around the same time, Plaintiff was diagnosed with PCOS.

24. Plaintiff subsequently disclosed her PCOS diagnosis by text and email to her supervisor, Sherrill Maxwell, while she was admitted to the hospital.

25. By informing Maxwell, Defendant was placed on notice of Plaintiff's disability and potential need for accommodation.

26. At the time of her initial disclosures, Plaintiff had not yet submitted formal medical documentation because the diagnoses were recent and Plaintiff was actively working with her healthcare providers to obtain supporting records and complete ADA accommodation paperwork.

27. During the week prior to her termination, Plaintiff and her physician discussed placing Plaintiff on unpaid intermittent medical leave to manage unpredictable symptom flare-ups of her disabilities.

28. Plaintiff's physician began preparing the required documentation for Plaintiff's unpaid medical leave.

29. On or about May 29, 2026, Plaintiff informed Maxwell, that the medical paperwork was in progress and that she would be requesting a reasonable accommodation.

30. In making this request, Plaintiff was engaging in protected activity.

31. Ms. Maxwell responded that she did not believe unpaid medical leave would be approved but instructed Plaintiff to contact the Human Resources Department.

32. Plaintiff also consulted an on-call nursing supervisor, who confirmed that the leave should not be a problem and directed Plaintiff to contact the Human Resources Department.

33. On or about May 29, 2026, at approximately 2:30 p.m., Plaintiff contacted the Human Resources Department, requesting the medical leave.

34. In making this request, Plaintiff was again engaging in protected activity.

35. The Human Resources Department representative confirmed that the leave should not be an issue and provided Plaintiff with contact information for a third-party administrator to process her accommodation request.

36. At that point, the only remaining step was for Plaintiff to contact the third-party administrator to obtain a fax number to submit the medical documentation.

37. Plaintiff's physician intended to submit via fax a packet outlining the anticipated duration and nature of the requested unpaid medical leave.

38. However, before Plaintiff's physician could do so, Defendant terminated Plaintiff's employment on or about June 3,2026.

39. Defendant terminated Plaintiff's employment for the pretextual reason of "attendance issues" after only approximately six absences.

40. Each of Plaintiff's absences was directly related to her disabling conditions, including severe migraine episodes requiring medication, abdominal pain associated with PCOS that required medical evaluation, and a prior incident involving assault.

41. At the time of her termination, Plaintiff had received only a level-one verbal warning for attendance and was not at risk of termination under Defendant's policies.

42. Defendant's own policy required escalation to a second-level warning after eight call-offs.

43. Plaintiff was terminated before reaching that threshold; meanwhile, other similarly situated non-disabled employees were retained until they reached eight absences.

44. Defendant effectively denied Plaintiff's request for reasonable accommodation without engaging in the interactive process required by the ADA.

45. Defendant failed to engage in any good-faith interactive process with Plaintiff to determine appropriate accommodation for her disabilities.

46. Defendant terminated Plaintiff on the basis of her disability and in retaliation for her request for reasonable accommodation.

47. Other similarly situated non-disabled employees were not subject to the same treatment as Plaintiff.

48. Plaintiff met or exceeded performance expectations throughout the duration of her employment with Defendant.

49. As a direct and proximate result of Defendant's conduct, Plaintiff suffered loss of income, loss of employment benefits, emotional distress, humiliation, embarrassment, and other damages.

50. Defendant's disability-based discrimination, failure to accommodate, and retaliation took a heavy mental toll on Plaintiff, who suffered and continues to suffer severe mental anguish and distress.

## COUNT I
### Violation of the Americans with Disabilities Act
### (Disability-Based Discrimination)

51. Plaintiff repeats and re-alleges paragraphs 1-50 as if fully stated herein.

52. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's disability, physical impairments, including chronic migraines and Polycystic Ovarian Syndrome ("PCOS"), in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

53. Plaintiff met or exceeded performance expectations throughout the duration of her employment with Defendant.

54. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class.

55. Defendant terminated Plaintiff on the basis of Plaintiff's disability.

56. Defendant's conduct toward Plaintiff illustrated a willful and/or reckless violation of the ADA.

57. Plaintiff is a member of a protected class under the ADA, due to Plaintiff's disability.

58. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

59. As a direct and proximate result of the discrimination described above, Plaintiff has

suffered and continues to suffer loss of employment, loss of income, loss of employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**COUNT II**
**Violation of Americans with Disabilities Act**
**(Failure to Accommodate)**

60. Plaintiff repeats and re-alleges paragraphs 1-50 as if fully stated herein.

61. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability, in violation of Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*.

62. Plaintiff is a qualified individual with a disability.

63. Defendant was aware of the disability and the need for accommodations, as Plaintiff disclosed her conditions to her supervisor and the Human Resources Department and communicated that medical documentation regarding her requested accommodations was forthcoming.

64. Defendant failed to engage in the interactive process to determine the appropriate accommodations after Plaintiff requested reasonable accommodation.

65. Plaintiff's requests were not an undue burden on Defendant.

66. Defendant did not accommodate Plaintiff's disability.

67. Plaintiff is a member of a protected class under Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq*., due to Plaintiff's disability.

68. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

69. As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, and loss

of enjoyment of life.

**<u>COUNT III</u>**
**Violation of Americans with Disabilities Act**
**(Retaliation)**

70. Plaintiff repeats and re-alleges paragraphs 1-50 as if fully stated herein.

71. Plaintiff is a member of a protected class under 42 U.S.C. § 12101, *et seq*.

72. During Plaintiff's employment with Defendant, Plaintiff disclosed her disabilities, notified Defendant that she intended to seek accommodations, and took steps to initiate the accommodation process.

73. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

74. In response to Plaintiff's request for reasonable accommodation, Defendant terminated Plaintiff.

75. By virtue of the foregoing, Defendant retaliated against Plaintiff, thereby violating Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*.

76. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity, specifically, termination.

77. Defendant acted in willful and reckless disregard of Plaintiff's protected rights.

78. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits, and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

**<u>RELIEF REQUESTED</u>**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find in Plaintiff's

favor and against Defendant as follows:

a. Back pay;

b. Payment of interest on all back pay recoverable;

c. Front pay;

d. Loss of benefits;

e. Compensatory and punitive damages;

f. Reasonable attorneys' fees and costs;

g. Award pre-judgment interest if applicable; and

h. Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury.

Dated this 30th day of October, 2026.

/s/ *Nathan C. Volheim*
**NATHAN C. VOLHEIM, ESQ.**
IL Bar No.: 6302103
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (630) 568-3056
Fax (630) 575 - 8188
nvolheim@sulaimanlaw.com
*Attorney for Plaintiff*

/s/ *Sophia Steere*
**SOPHIA STEERE, ESQ.**
KY Bar No.: 100481
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 307-7634
Fax (630) 575 - 8188

ssteere@sulaimanlaw.com
*Attorney for Plaintiff*